**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Tashi Phuntsok,<br>Petitioner,<br>v.<br>Unknown Party, et al.,<br>Respondents. | No. CV-26-02629-PHX-SHD (MTM)<br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE SHARAD H. DESAI, UNITED STATES DISTRICT JUDGE:

Petitioner Tashi Phuntsok, who is currently detained at the San Luis Regional Detention Center, has filed a pro se Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241. (Doc. 1.)

## I. SUMMARY OF CONCLUSION

Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b) by the Department of Homeland Security Immigration and Customs Enforcement and has been detained since February 11, 2025. On February 26, 2026, an Immigration Judge denied Petitioner's asylum application which he subsequently appealed. Petitioner's appeal remains pending with the Board of Immigration Appeals (BIA). Petitioner contends that his "unlawful and unjustified detention for more than 1 year without the possibility of parole or bond" violates his constitutional rights. Petitioner requests immediate release from custody or a prompt and meaningful bond hearing. However, because Petitioner is

subject to mandatory detention pursuant to 8 U.S.C. § 1225(b), and he is not constitutionally entitled to a bond hearing or release, the Court will recommend that the Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

## II. BACKGROUND

Petitioner is a native and citizen of the Peoples Republic of China. (Doc. 9-1, Exh. A.) Petitioner entered the United States on February 11, 2025, without inspection, admission, or parole. (*Id.*) Petitioner was immediately encountered by immigration officials and processed for expedited removal. (*Id.*) The record reflects that Petitioner was transferred to the custody of the United States Marshals Service pending criminal prosecution for illegal entry under 8 U.S.C. § 1325(a)(1). (Doc. 9-2, Exh. B.) Petitioner was convicted on February 21, 2025, and sentenced to time served. (*Id.*) Petitioner was transferred to U.S. Immigration and Customs Enforcement custody on March 1, 2025. (Doc. 1 at 5.)

On July 2, 2025, Petitioner was served with a Notice to Appear charging him with violating Immigration and Nationality Act ("INA") Sections 212(a)(6)(A)(i) as an alien present without admission or parole and 212(a)(7)(A)(i)(I) as an immigrant who did not have valid entry documents at the time of application for admission. (Doc. 1 at 27.) The record reflects that Petitioner's application for asylum, withholding of removal, and protection under the Convention Against Torture was denied on February 26, 2026, and Petitioner was ordered removed. (Doc. 9-3, Exh. C.) Petitioner's appeal of that decision remains pending with the BIA.

## III. PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

In his Petition, Petitioner contends that his "unlawful and unjustified detention for more than 1 year without the possibility of parole or bond" violates his constitutional rights. Petitioner requests immediate release from custody or a prompt and meaningful bond hearing. (Doc. 1.)

Respondents have filed a Response, and Petitioner has filed a Reply. (Docs. 9, 10.)

\\\

## IV. DISCUSSION

The district court is empowered to issue a writ of habeas corpus where an individual is held "in custody in violation of the Constitution or laws or treaties of the United States . . . ." 28 U.S.C. § 2241(c)(3). The language of § 2241 and "the common-law history of the writ" makes clear "that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475 484 (1973) (noting that the writ of habeas corpus "was early recognized by [the Supreme] Court as a 'great constitutional privilege'"). The Supreme Court has made clear that § 2241 applies to noncitizens challenging their immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001).

Because Petitioner challenges his prolonged civil detention, the Court has jurisdiction to address the instant Petition. *See Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order . . . .").

### A. Detention Pursuant to 8 U.S.C. § 1225(b)

The record reflects that Petitioner entered the United States and was immediately apprehended. He is an applicant for admission subject to expedited removal and his claims for asylum are currently pending before the BIA. The Court finds that he is detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii).

There are three statutes that govern immigration detention of a noncitizen: 8 U.S.C. §§ 1225, 1226, and 1231. "A noncitizen's place within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) (cleaned up).

Generally, the decision over who may enter the United States and remain here after entry "begins at the Nation's borders and port of entry" and is governed by 8 U.S.C. §

1225. *See Jennings v. Rodriguez*, 583 U.S. 281, 286-87 (2018). "An alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed . . . an applicant for admission."[1] 8 U.S.C. § 1225(a). Applicants for admission are inspected by immigration officers to ensure that they may be admitted pursuant to federal immigration law. *See Jennings*, 583 U.S. at 287.

Applicants for admission fall under one of two categories, § 1225(b)(1) and § 1225(b)(2). Applicants falling under § 1225(b)(1), expedited removal, are those noncitizens who were "initially determined to be inadmissible because of fraud, misrepresentation, or lack of valid documentation." *Banda v. McAleenan*, 385 F.Supp.3d 1099, 1111 (W.D. Wash. 2019). These individuals are subject to an expedited removal process without a hearing before an IJ. 8 U.S.C. § 1225(b)(1). However, if "the alien indicates either an intention to apply for asylum . . . or a fear of persecution," they may be provided a hearing before an IJ following a credible fear screening by an asylum officer. *Id.* § 1225(b)(1)(A)(i)-(ii), (B)(i)-(iii). "Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution . . . ." *Id.* § 1225(b)(1)(B)(iii)(IV). "If the officer determines at the time of the interview that an alien has a credible fear of persecution . . . the alien shall be detained for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii).

In the instant action, Petitioner is detained pursuant to § 1225(b)(1)(B)(ii) – a noncitizen with a credible fear of prosecution that "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Accordingly, because Petitioner is statutorily subject to mandatory detention pursuant to 8 U.S.C. § 1225(b) while the denial of his asylum claims is reviewed by the BIA, the Court will proceed to Petitioner's due process argument.

**B. Due Process**

Petitioner argues his "unlawful and unjustified detention for more than 1 year without the possibility of parole or bond" violates his constitutional rights, and he seeks

[1] An applicant for admission is also referred to as an "arriving alien." *See* 8 C.F.R. § 1001.1(q).

release or an individualized bond hearing. In response, Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) and the Due Process Clause does not require an individualized bond hearing.

Although the limited record before the Court reflects that Petitioner has spent a significant period in immigration detention while pursuing his claims, the Court finds that the governing precedent concerning arriving aliens detained under 8 U.S.C. § 1225(b) presents substantial obstacles to his due process challenge.

Petitioner argues that his continued mandatory detention without an individualized bond hearing violates the Due Process Clause. Petitioner's argument finds support in a number of district court decisions recognizing that prolonged detention may, at some point, raise constitutional concerns. *See, e.g.*, *Banda v. McAleenan*, 385 F.Supp.3d 1099, 1117 (W.D. Wash. 2019) ("[T]he Court joins the vast majority of other district courts to conclude that unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process."); *Gomez v. Doe*, No. CV 25-03255-PHX-JJT (CDB), 2025 WL 3269886, at *11 (D. Ariz. Nov. 3, 2025) (holding that "[t]he Fifth Amendment's Due Process Clause extends to all persons, regardless of status" and applying a balancing test to determine what procedural safeguards apply to a noncitizen challenging his detention under § 1225(b)(2)(A)), *report and recommendation adopted sub nom. Gomez v. Unknown Party*, 2025 WL 3269055 (D. Ariz. Nov. 24, 2025); *Avakian v. Cantu*, No. CV-26-00104-PHX-SHD, 2026 WL 746351, at *2 (D. Ariz. Mar. 17, 2026) (applying due process considerations to petitioner's prolonged detention under § 1225(b)).

Courts have applied a variety of balancing tests to evaluate on a case-by-case basis whether mandatory detention under § 1225(b) without a bond hearing violates due process. *See, e.g.*, *Imani v. Cantu*, No. CV 26-01933-PHX-DJH (CDB), 2026 WL 1406307, at *10 (D. Ariz. May 4, 2026) ("The [Ninth Circuit] has not provided the lower courts with guidance regarding the point at which an immigration detainee's prolonged mandatory detention under § 1225(b) without a bond hearing becomes unconstitutional. The District Courts within the Ninth Circuit's jurisdiction have generally found the test stated in *Banda*

*v. McAleenan*, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) applicable with regard to those detained pursuant to § 1225(b) . . . , although some courts have instead applied the test stated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) . . . which has often been applied in situations involving detention under § 1226(c).”), *report and recommendation adopted*, 2026 WL 1398596 (D. Ariz. May 19, 2026).

Petitioner’s circumstances evoke similar concerns. He has remained in custody since February 11, 2025, when he entered the United States on February 11, 2025, without inspection, admission, or parole and was immediately detained. (Doc. 9-1, Exh. A.) Petitioner was denied asylum and his appeal of that decision remains pending before the BIA. (Doc. 9-3, Exh. C.) The length of his detention is undoubtedly burdensome and has occurred while his claims remain unresolved.

Nevertheless, existing Supreme Court and Ninth Circuit precedent have distinguished between noncitizens who have established substantial ties to the United States and those like Petitioner who are treated, for legal purposes, as applicants for admission at the threshold of entry. In *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), the Supreme Court reiterated that Congress possesses broad authority to determine the conditions under which an alien may enter the United States and that an alien seeking initial admission generally cannot claim procedural due process rights beyond those provided by statute. The Court relied upon a long line of cases, *see, e.g., Nishimura Ekiu v. United States*, 142 U.S. 651 (1892), *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537 (1950), and *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), reaffirming that Congress may prescribe the procedures governing admission and exclusion decisions. *Thuraissigiam*, 591 U.S. at 138-39 (“The power to admit or exclude aliens is a sovereign prerogative,” “the Constitution gives ‘the political department of the government’ plenary authority to decide which aliens to admit,” and “a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted.” (internal citations omitted)).

This court confronted a closely related issue in *Ibarra-Perez v. Howard*, 468 F. Supp. 3d 1156 (D. Ariz. 2020). There, an alien detained pursuant to § 1225(b) argued that his prolonged detention without a bond hearing violated due process. After reviewing applicable Supreme Court and Ninth Circuit authority, the court concluded that detention of an arriving alien during the pendency of removal proceedings remained constitutionally permissible. *Id.* at 1177. The court observed that neither *Jennings v. Rodriguez*, 583 U.S. 281 (2018), nor subsequent Ninth Circuit decisions had undermined prior precedent suggesting that mandatory detention under § 1225(b) may continue for the duration of pending removal proceedings. *Id.*

Importantly, *Ibarra-Perez* acknowledged the existence of contrary district court authority, including *Banda*, and recognized the liberty interests at stake. However, it ultimately declined to adopt those decisions because they did not fully account for the entry-fiction doctrine and related Ninth Circuit precedent governing arriving aliens detained under § 1225(b).[2] *Id.* Specifically, the court stated,

> [T]he Court must do its best to discern and apply the law of the Ninth Circuit as it currently stands. As discussed, [*Barrera-Echavarria v. Rison*, 44 F.3d 1441 (9th Cir. 1995) (en banc)] suggests it is constitutionally permissible to require Petitioner to remain in custody for the duration of his removal proceeding. If anything, the Ninth Circuit seemed to ratify that understanding of *Barrera-Echavarria* in *Rodriguez II* [*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013)] and *Rodriguez III* [*Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015)]. And neither the Supreme Court's decision in [*Jennings*] nor the Ninth Circuit's remand order in *Rodriguez V* [*Rodriguez v. Marin*, 909 F.3d 252 (9th Cir. 2018)] casts any doubt upon the continued validity of those portions of *Barrera-Echavarria*, *Rodriguez II*, and *Rodriguez III*.

---

[2] The entry fiction doctrine is based upon the "distinction between those aliens who have come to our shores seeking admission, such as petitioner, and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). The Supreme Court has noted that the latter category of noncitizens has "additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* (quoting *Mezei*, 345 U.S. at 212); *Thuraissigiam*, 591 U.S. at 139 ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned") (quoting *Shaughnessy*, 338 U.S. at 544). Those noncitizens who are on the "threshold of initial entry" are not considered "to have 'effected an entry[.]'" *Thuraissigiam*, 591 U.S. at 140 (quoting *Zadvydas*, 533 U.S. at 693).

*Ibarra-Perez*, 468 F. Supp. 3d at 1177.[3] Notably, the court recognized that 1225(b) does not authorize the Attorney General to incarcerate detainees for an indefinite period and emphasized that the petitioner would be detained only "'until specified events take place,' i.e., until the resolution of the current removal proceeding . . . [a]nd if Petitioner's removal ceases to become reasonably foreseeable, Petitioner [would] have other potential avenues for seeking release." *Id.* (internal citations omitted).

*Thuraissigiam*, decided shortly after *Ibarra-Perez*, further reinforced that conclusion. Although *Thuraissigiam* arose in the context of admission procedures rather than prolonged detention, it relied on the holding of *Mezei* – which was decided in the detention context. Since *Thuraissigiam*, other courts have concluded that mandatory detention under § 1225(b) does not create a constitutional entitlement to an individualized bond hearing. *See, e.g.*, *Petgrave v. Aleman*, 529 F. Supp. 3d 665 (S.D. Tex. 2021); *Gonzales Garcia v. Rosen*, 513 F. Supp. 3d 329 (W.D.N.Y. 2021); *Leon Alcazar v. Cantu*, No. CV-24-03342-PHX-JAT (DMF), 2025 WL 2548698 (D. Ariz. June 5, 2025), *report and recommendation adopted* 2025 WL 2304357 (D. Ariz. Aug. 11, 2025); *Chavez v. Noem*, 2026 WL 381618 (D. Ariz. Feb. 9, 2026); *Ibarra-Perez*, 468 F. Supp. 3d 1156; *Mamedova v. Noem*, 2026 WL 1162282 (D. Ariz. Apr. 29, 2026); *Savin v. Rivas*, 2026 WL 1162384 (D. Ariz. Apr. 29, 2026).

At the same time, and as illustrated above, the law remains unsettled. The Ninth Circuit has acknowledged that it remains unresolved whether the Due Process Clause requires additional bond procedures under any immigration detention statute. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201 (9th Cir. 2022). Thus, while authority exists supporting Petitioner's concerns regarding prolonged detention, neither the Supreme Court nor Ninth Circuit precedent presently establish a constitutional right to an individualized bond hearing for an arriving alien subject to mandatory detention under § 1225(b).

[3] With regards to *Banda*, the court specifically stated, "[i]n *Banda*, which is the district court decision on which Petitioner primarily relies, the court did not cite or discuss *Barrera-Echavarria*, the 'entry fiction,' or the portions of *Rodriguez II* and *Rodriguez III* that seem to adopt *Barrera-Echavarria's* logic as it pertains to arriving aliens who are detained under § 1225(b) and are subject to the entry fiction." *Ibarra-Perez*, 468 F. Supp. 3d at 1177.

Furthermore, although in this case Petitioner's detention has been lengthy, the record demonstrates that he has received the procedural protections Congress has provided. Petitioner entered the United States on February 11, 2025, without inspection, admission, or parole. Petitioner was immediately encountered by immigration officials and processed for expedited removal. He applied for asylum and his appeal of the denial his asylum application is currently pending before the BIA. His detention therefore remains tied to, and time-bound by, the ongoing adjudication of his claims.

The Court notes that this is not a case of indefinite detention. Under *Jennings*, detention authorized by § 1225(b) continues only until specified events occur – namely, the conclusion of immigration proceedings or removal. If Petitioner prevails on appeal, he may obtain release through that process. If he becomes subject to a final order of removal and detention later extends beyond the period authorized by statute, additional remedies are available. *See Ibarra-Perez*, 468 F. Supp. 3d at 1177.

Accordingly, existing Supreme Court and Ninth Circuit precedent do not presently establish a constitutional right to an individualized bond hearing for an arriving alien detained under § 1225(b). Petitioner has been afforded the process authorized by Congress and he is not facing indefinite detention.

## V. CONCLUSION

Based on the above analysis, the Court finds that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b), and Petitioner is not constitutionally entitled to a bond hearing or release. The Court will recommend that the Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

Accordingly,

**IT IS THEREFORE RECOMMENDED** that the Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The

parties shall have 14 days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72.

Dated this 19th day of August, 2026.

Michael T. Morrissey

Honorable Michael T. Morrissey
United States Magistrate Judge